# EXHIBIT 2



SEAN HEALEY
DIRECT 713.600.4934
MAIN 713.655.1101
FAX 713.655.0062
shealey@azalaw.com

February 6, 2025

***Via Email***
Brett C. Govett
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
214-651-5247
brett.govett@nortonrosefulbright.com

RE:   Case No. 2:24-cv-00325; *Autoscribe Corp. v. Nuvei Corporation et al*

Counsel,

I write on behalf of Autoscribe Corporation ("Autoscribe") in the above referenced case. As you know, in the Eastern District of Texas, formal document requests in patent cases are unnecessary because the Parties are obligated under Rule 26 and Local Rule CV-26 to disclose to each other all non-privileged relevant documents. For clarity, we provide below an additional, non-exhaustive, list of examples of categories of documents that we have identified as relevant in the above-captioned case, which we expect you have and will search for, preserve, and timely produce or log.

Accordingly, Autoscribe requests that Defendants produce as soon as possible all relevant documents within the meaning of the Rules, including without limitation:

1. All Documents, Communications, and Things that constitute, refer to, or relate to Source Code used to perform, process, or configure any of the Hosted Tokenization methods, processes, or apparatuses involved in the Accused Instrumentalities.[1]

2. All Documents, Communications, and Things that constitute, refer to, or relate to any internal or external tests, analyses, studies, reports, inspections, forecasts, or business plans regarding any component or feature of the Accused Instrumentalities

3. All lab notebooks, engineering notebooks, product justifications, technical Documents, technical reports, publications, application notes, product evaluations, product proposals, product comparisons, testing reports, progress reports, and minutes of technical meetings referring or relating to the Accused Instrumentalities.

---

[1] The definitions provided in Attachment A apply throughout this letter. For the avoidance of doubt, the phrase "Accused Instrumentalities" means any products, services, or instrumentalities that use or rely on the inventions claimed in the '621 Patent, including but not limited to the instrumentalities alleged to infringe in Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions.

Sean F. Healey
February 6, 2025
Page 2

4. All Documents, Communications, and Things that identify or are sufficient to show the dates when Nuvei or its Third Party Users first used Hosted Tokenization technology.

5. All Documents, Communications, and Things sufficient to show how You use Hosted Tokenization technology and how, if at all, Your use of Hosted Tokenization has changed over time.

6. All Documents, Communications, and Things sufficient to show how Third Party Users of the Accused Instrumentalities use Hosted Tokenization technology and how, if at all, their use of Hosted Tokenization has changed over time.

7. All Documents, Communications, and Things that constitute, refer, or relate to Your decision to use Hosted Tokenization Technology, including consumer surveys, third-party research, presentations, and evaluations of Hosted Tokenization versus any alternatives.

8. All Documents, Communications, and Things that Identify the features of the Accused Instrumentalities use, requested, desired, or expected by Nuvei's customers, Third Party Users, or customers of Third Party Users, including any customer feedback.

9. All Documents, Communications, and Things that refer or relate to the Asserted Patent, any related patents, or this Action.

10. All Documents, Communications, and Things that refer or relate to any inventor or assignee of the Asserted Patent, including Autoscribe and any Person or entity relating to Autoscribe.

11. All Documents, Communications, and Things that refer or relate to the inventions described in the Asserted Patent.

12. All Documents, Communications, and Things that refer or relate to the potential value, validity, alleged invalidity, infringement, alleged non-infringement, enforceability, alleged unenforceability, or interpretation of the Asserted Patent or the inventions described therein.

13. All Documents, Communications, and Things referred to in Nuvei's initial disclosures or any amendments thereto, or used or relied upon in preparation of the same.

14. All Documents, Communications, and Things that You contend support a conclusion that You do not infringe the Asserted Patent.

15. All Documents, Communications, and Things that constitute, refer to, or relate to any study, evaluation, opinion, assertion, or analysis (other than a privileged

Sean F. Healey
February 6, 2025
Page 3

opinion of counsel and related documents) of whether any Accused Instrumentality is or is not covered by any claim of the Asserted Patent.

16. Documents relating to any planned, potential, or implemented design-around of any claim of the Asserted Patent.

17. Documents, Communications, and Things that You contend evidence the level of ordinary skill in the art pertaining to the inventions claimed in the Asserted Patent.

18. Documents, Communications, and Things that evidence, contradict, refer to or relate to any long-felt need for Hosted Tokenization or other considerations of non-obviousness concerning the Asserted Patent.

19. All Documents, Communications, and Things that evidence, contradict, refer to, or relate to the commercial success of Hosted Tokenization technology, including the Accused Instrumentalities.

20. All Documents, Communications, and Things that evidence, contradict, refer to, or relate to any praise, criticism, disadvantage, or discussion of the significance of any inventions claimed in the Asserted Patent, or of any process, method, or device that embodies or uses any such inventions including, but not limited to, the Accused Instrumentalities.

21. Documents sufficient to show when You first became aware of the Asserted Patents.

22. All Documents, Communications, and Things that constitute, refer to, or relate to Your practices, policies, and procedures with respect to reviewing, acquiring, securing, or enforcing patents or any other intellectual property assets or rights.

23. Documents relating to Nuvei's patent clearance or patent avoidance policies, including internal training materials and policies relating to preparing or obtaining freedom to operate opinions.

24. All Documents, Communications, and Things that constitute, refer to, or relate to any contract, agreement, or license between You and any Third Party User or other third party relating to the Accused Instrumentalities.

25. All Documents, Communications, and Things that constitute or refer to instructional materials, manuals, or technical assistance documents Nuvei provides to Third Party Users relating to the Accused Instrumentalities.

26. Documents, Communications, or Things constituting or referring to technical specifications or design documents for the Accused Instrumentalities.

Sean F. Healey
February 6, 2025
Page 4

27. All Source Code or software programs, including APIs, that Nuvei uses internally or sends to Third Party Users relating to the Accused Instrumentalities.

28. All Documents, Communications, or Things constituting or referring to catalogs, advertisements, marketing materials, sales materials, or promotional materials advertising or otherwise encouraging the use of the Accused Instrumentalities.

29. Documents sufficient to show which merchants use, have used, or might use the Accused Instrumentalities, including lists of Third Party Users or potential Third Party Users.

30. Documents, Communications, and Things sufficient to identify each customer of the Accused Instrumentalities, including the date(s) on which they became a customer, and all contract or license renewals related to same.

31. All Documents, Communications, or Things that constitute, refer to, or relate to any license that You contend is comparable to a license that You and Autoscribe would have agreed to in a hypothetical negotiation in this case.

32. Documents sufficient to show Your policies relating to responding to licensing offers and infringement notices.

33. All Documents, Communications, or Things constituting, referring to, or relating to a licensing agreement between Nuvei and any person or entity for a patent, trademark, copyright or other intellectual property license.

34. All Documents, Communications, and Things that constitute, refer to, or relate to any efforts to license or requests to license Hosted Tokenization technologies or technologies relating to the Accused Instrumentalities, whether or not consummated.

35. All Documents, Communications, and Things that constitute, refer to, or relate to any license or agreement entered into by You related to use of Hosted Tokenization or the Accused Instrumentalities.

36. All Documents, Communications, and Things that constitute, refer to, or relate to any license that You contend is comparable to a license that You and Autoscribe would have agreed to in a hypothetical negotiation in this case, including any analysis of the calculation, validity, or infringement of the intellectual property included within the allegedly comparable license.

37. All Documents, Communications, and Things that constitute, refer to, or relate to Your patent licensing practices, policies, and procedures.

Sean F. Healey
February 6, 2025
Page 5

38. All Documents, Communications, and Things that constitute, refer, or relate to demand or market need for Nuvei's Hosted Tokenization technology or the Accused Instrumentalities.

39. All Documents, Communications, and Things that refer or relate to Your market share in any for Hosted Tokenization technology.

40. All Documents, Communications, and Things that refer or relate to Your financial condition, including all of Your annual reports, annual financial statements, quarterly reports, quarterly financial statements, income statements, balance sheets, financial filings, statements of operations, cash flow statements, expense statements, and other earnings or financial statements, whether audited or unaudited and whether for external or internal purposes.

41. All Documents, Communications, and Things that constitute, refer to, or relate to Your business or revenue generation plans as it relates to the Accused Instrumentalities, including any valuations of the Accused Instrumentalities.

42. Documents sufficient to show the unit sales, revenue, and profit on a month-by-month basis resulting from each of the Accused Instrumentalities.

43. Documents sufficient to show Defendants' monthly and annual net revenues, on a product-by-product[2] basis, for all Accused Instrumentalities.

44. Documents sufficient to show Defendants' monthly and annual expenses (both direct and indirect), on a product-by-product basis, for all Accused Instrumentalities.

45. Documents sufficient to show Defendants' monthly and annual gross and net profits, on a product-by-product basis, for all Accused Instrumentalities.

46. Documents sufficient to show Defendants' monthly and annual transactional volume by monetary amounts, on a product-by-product basis, for all Accused Instrumentalities.

47. Documents sufficient to show Defendants' monthly and annual transactional count, on a product-by-product basis, for all Accused Instrumentalities, including at least the following information:

    a. The itemized transactions.
    b. Transaction identification numbers for each transaction.
    c. The token identification number or reference for each transaction.
    d. The date each token was created.

---

[2] As used herein, "product-by-product" shall be understood to include "service-by service," as applicable.

Sean F. Healey
February 6, 2025
Page 6

    e. The date(s) each token was posted or used.

    f. The payment method (e.g., credit card, ACH) for each transaction.

    g. The transaction or authorized amount for each transaction.

    h. The order number(s) for each transaction.

    i. The transaction status (e.g. Approved, Declined) for each transaction.

    j. The URL address(es) generated, sent, or used in each transaction.

48. All Documents, Communications, or Things that refer or relate to any established royalty rate, or any royalty or royalty rate calculated, proposed, considered, charged, or collected by Defendants in connection with any patent covering the technology comparable to the technology of the '621 Patent.

49. All Documents, Communications, and Things that refer or relate to any established royalty rate, or any royalty or royalty rate calculated, proposed, considered, charged, or collected by You or by others in connection with the Accused Instrumentalities or Hosted Tokenization.

50. All Documents, Communications, or Things that refer or relate to analyses, studies, or surveys of Defendants' (or their competitors') use of technology comparable to the technology of the '621 Patent and the resulting expected and/or measured effect on Defendants' (or competitors') business, sales, or profitability.

51. All Documents, Communications, and Things that constitute, refer to, or relate to the appropriate measure of damages to compensate Autoscribe for Your infringement of any of the Asserted Patent including, but not limited to, any Documents reflecting risk analysis.

52. To the extent You contend Autoscribe has not suffered monetary damages as a result of Your infringement of the Asserted Patents, all Documents, Communications, and Things that support that allegation.

53. All Documents, Communications, and Things that constitute, refer to, or relate to any analysis or calculation of amount of damages, lost profits, or a reasonable royalty in this case.

54. Documents sufficient to show Your Document retention and/or destruction policies and procedures including any such policies regarding any Accused Instrumentality.

55. All Documents, Communications, and Things that You reviewed, relied upon, or referred to in preparing Yours Answers to the Complaints or any affirmative defense contained therein.

Sean F. Healey
February 6, 2025
Page 7

56. All Documents reviewed, referenced, or relied upon in preparing responses to any interrogatory or response to requests for admission served in this Action.

57. All employee manuals and/or employee handbooks (or similar) containing guidelines, policies, or procedures relating to intellectual property.

58. Exemplars of each type of employment agreement You require Your engineers who work on the Accused Instrumentalities or Hosted Tokenization to execute as a condition of their employment.

Please let us know if Defendants do not have documents responsive to any above-identified category in its possession, custody, or control. To the extent Defendants contend that any document described above is not relevant to this litigation, please let us know promptly so that we may evaluate Defendants' position and proceed accordingly.

Finally, to the extent that any relevant documents are subject to third-party confidentiality obligations, Plaintiff requests that Defendants promptly take all necessary steps to obtain any required third-party consent to produce the documents. In the event any third party refuses production, we request that you promptly notify us of such refusal.

Sincerely,

*[signature]*

Sean F. Healey

Sean F. Healey
February 6, 2025
Page 8

# ATTACHMENT A – DEFINITIONS

1. The terms "You," "Your," "Defendants," and/or "Nuvei" mean Defendants Nuvei Corporation, Nuvei Technologies Corporation, Nuvei Limited, and Nuvei International Group Limited, in the above-captioned action, and their predecessors, successors, subsidiaries, corporate parents (if any), branches, departments, divisions, affiliates, and any other organization in which Nuvei has a managing or controlling interest and Nuvei's attorneys, economists, auditors, accountants, consultants, employees, agents, representatives, officers, directors, and any person acting on behalf of Nuvei, directly or indirectly.

2. The terms "Plaintiff," or "Autoscribe" shall refer to Plaintiff Autoscribe Corporation, in the above-captioned lawsuit, and shall include its predecessors, successors, subsidiaries, divisions, assigns, or affiliates, if applicable.

3. The term "this Action" shall refer to the above-captioned lawsuit.

4. The term "Complaint" or "Complaints" shall refer to the Complaint filed in this Action filed by Autoscribe against Nuvei, Dkt. 1, or any amendments thereto, including the Amended Complaint, Dkt. 35.

5. The term "Asserted Patent" shall refer to United States Patent No. 11,620,621.

6. The term "Prior Art" means any patent, publication, or activity allegedly falling within any of the categories of 35 U.S.C. §§ 102 or 103.

7. The term "Infringe," or "Infringement" shall mean direct infringement, literal infringement, infringement under the doctrine of equivalents, contributory infringement, and/or infringement by inducement.

8. The term "Accused Instrumentalities" shall mean every apparatus, product, device, process, method, act, or other instrumentality (including any earlier or later versions, rebrands, models, or generations) that Plaintiff alleges in this litigation to infringe any claim of any of the Asserted Patents, including instrumentalities identified in Plaintiff's "Disclosure of Asserted Claims and Preliminary Infringement Contentions," served on October 4, 2024 and any permitted amendments thereto.

Sean F. Healey
February 6, 2025
Page 9

9. The terms "relating to," "related to," or "relate to" shall mean embodying, pertaining, concerning, involving, constituting, commenting upon, comprising, reflecting, discussing, evidencing, mentioning, referring to, consisting of, responding to, or having any logical or factual connection whatever with the subject matter in question. The term "relate" or any variant thereof, including by not limited to "relating to," when used in connection with any Document, shall be understood to apply if the Document directly or indirectly evidences, mentions, discusses, constitutes, concerns, supports, contradicts, refers to, or in any other way deals with the subject matter described in the request in which the term appears.

10. The use of a verb in any tense shall be construed as the use of the verb in all other

11. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

12. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

13. The use of the singular form of any word includes the plural and vice versa.

14. Wherever the word "including" appears, the meaning intended is always "including, but not limited to."

15. The term "Thing" shall be interpreted in the most comprehensive and inclusive sense in light of Fed. R. Civ. P. 34 and means any physical article responsive to the request that is not a document and that is in the possession, custody, or control of Defendant.

16. "Projection" means and refers to any estimate of the future value of any economic or financial variable, including estimates of sales in units and revenue, costs, profit, and the like.

17. The term "Hosted Tokenization" refers to where one entity obtains financial information (e.g., from a customer) through a hosted webpage or a hosted form or window embedded in a second entity's (e.g., a merchant's) webpage and provides the second entity with a non-sensitive token representing the financial information for use in processing payments.

Sean F. Healey
February 6, 2025
Page 10

18. The term "Document" shall be at least as broad as the meaning and scope as the term "documents or electronically stored information" is used in Federal Rule of Civil Procedure 34(a)(1)(A). As used herein, the term "document" means any written, types, printed, recorded, electronic, or computer- stored material, whether in draft or final form, and each non-identical copy or otherwise, and includes, without limitation, contracts, checks, records of wire transfers, financial statements, invoices, ledgers, reports of any nature, memoranda, correspondence, note pads, notices, minutes and notes of meetings, records of discussions and conversations, diaries, calendars, charts, lists, journals, electronically-stored or generated information (including computer records, computer runs, computer disks, electronic mail, and PDA files), tape recordings, microfilm, microfiche, and any other data compilations from which information can be obtained, translated, or deciphered, or any other tangible thing containing writings. A draft or non-identical copy is a separate document within the meaning of this term.

19. The term "All Documents" shall mean any and all documents that might reasonably be located through a search of all locations likely to contain such documents.

20. The term "Communication(s)" shall mean any transfer of information, facts, ideas, opinions, inquiries, or thoughts by any means, written, oral or otherwise, at any time or place under any circumstances.

21. The term "All Communications" shall mean any and all communications that might reasonably be located through a search of all locations likely to contain such communications.

22. The term "agreement" shall include any contract, understanding, license, settlement, deal, or assignment, including amendments and/or modifications thereto.

Sean F. Healey
February 6, 2025
Page 11

23. The term "Source Code" as used herein shall mean and encompass human-readable programming language text that defines software, firmware, or electronic hardware descriptions. The term Source Code includes, but is not limited to, files containing source in "Java," "ActionScript," "PHP," "HTML," "HTML 5," Javascript," "XML," "JSON," "C," "C++," assembler, VHDL, Verilog, RTL, or digital signal processor ("DSP") programming languages. Source Code as used herein further includes "make files," "include files," "link files," "schematics," "flowcharts," "Gliffy" and Confluence documentation, manuals, and other human-readable text files used in the generation, building, and/or assessment of software executed on a processor, DSP, microcontroller, baseband processor, ethernet transformer, and/or radio frequency signal transmitter, transceiver, receiver, and/or antennae hardware. Source Code shall be understood to include all versions of Source Code that You contend differ in any material manner for purposes of determining infringement. For example, if You contend that different versions of Source Code operate in materially different ways, each different version of Source Code should be understood to be included within this definition.

24. "Third Party Users" means all merchants, users, clients, partners or affiliates who use, import, sell, resell, provide, or integrate into their products or services the Accused Instrumentalities, including those entities listed in paragraph 39 of Plaintiff's Amended Complaint for Patent Infringement, and any entities with similar contracts, deals, or arrangements with Nuvei.