# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Autoscribe Corporation | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No.: 2:24-cv-00325 |
| | § | |
| Nuvei Corporation, Nuvei Technologies Corporation, Nuvei Limited, and Nuvei International Group Limited | § § § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants.* | § | |

## ORDER REGARDING E-DISCOVERY

The Court ORDERS as follows:

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the court's discretion or by agreement of the parties. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference. If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall only be required to include the following metadata fields to the extent such

information exists:

| FIELD | DEFINITION |
|---|---|
| BegDoc | Beginning Bates number assigned to each page/document |
| EndDoc | Ending Bates number assigned to each page/document |
| Custodian | Document custodian (Last name, First name) |
| FileName | Name of document |
| FileType | File extension (xls, doc, etc.) |
| Confidentiality | Protective Order designation (such as "Confidential") |

Additionally, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production if such fields exist. To the extent a producing Party[1] wishes to rely upon the metadata in a document it has produced to establish its date, the Party shall provide written notice of its intent to use such metadata and a copy of the native of the document with the original metadata intact.

5. Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

   (a) **General Document Image Format**. Each electronic document not produced in native format shall be produced in single-page Tagged Image File Format ("TIFF") format. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

   (b) **Text-Searchable Documents**. No party has an obligation to make its production

---

[1] For the purposes of this ESI Order, Nuvei Corporation, Nuvei Technologies Corp., Nuvei International Group Limited, and Nuvei Limited shall collectively be considered one party.

text- searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

(c) **Footer**. Each document image shall contain a footer with a sequentially ascending production number.

(d) **Native Files**. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

Native documents shall be named with the original file extension and the beginning Bates number for the document, and produced with a slipsheet indicating that the document was produced in native format and containing both the beginning Bates number for the document and the appropriate confidentiality designation.

The parties agree that all spreadsheet, database, video, and audio files shall be produced in native form without a need for a specific request to the extent that native copies of such files are within a party's possession, except TIFF or PDF images of spreadsheets may be produced for redacted files.

(e) **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the

present case.

(f) **Voicemail, Mobile Devices, Text Messages, Social Media.** [**Autoscribe's proposal:** "Absent a showing of good cause, voicemails, PDAs and mobile phones, and communications on iMessage and Snapchat are deemed not reasonably accessible and need not be collected and preserved."[2,3]] [**Nuvei's proposal:** "Absent a showing of good cause, voicemails, PDAs, mobile phones, and communications on chat services (*e.g.*, Skype, WhatsApp, iMessage, Snapchat, Teams) are deemed not reasonably accessible and need not be collected and preserved."]

(g) **Translation**. All documents shall be produced in their original language, if that is how the document is kept in the ordinary course of business. Where a requested English-language version(s) of that document is created in the ordinary course of

---

[2] **Autoscribe's position. ¶5(f):** Autoscribe's original proposal was taken verbatim from the Model Order. To streamline the dispute before the Court, Autoscribe has agreed to part of Defendants' proposed modifications, which broaden this exclusion such that chat messages on Snapchat or iMessage need not be collected, even if they are installed on a custodian's work computer. But Autoscribe does not agree to extend this exclusion to workplace chat services, such as Microsoft Teams, Skype, and WhatsApp (addressed in more detail in Paragraph 6, below), each of which is commonly used in professional environments for work purposes. To the extent Defendants' concern is that these are being used only for personal purposes and not for professional purposes, then the exclusion of mobile devices resolves that concern. But if these services are installed on a custodian's work computer, then that is an indicator that they are being used for professional purposes and are hence relevant (for the same reason emails are, as discussed in the context of ¶6, below)—Autoscribe cannot agree to an outright exclusion.

[3] **Nuvei's position. ¶5(f):** This question rises and falls with the relevance of email, presented at footnote 7. Autoscribe has not shown that email or chat discovery is relevant to this case. "It is well-settled that 'the party seeking discovery has the burden of demonstrating clearly that the information sought is relevant to the case and would lead to admissible evidence.'" *Med. Protective Co. v. Hipke*, Case No. 6:22-cv-223-JDK, 2023 U.S. Dist. LEXIS 157605, at *2 (E.D. Tex. May 26, 2023) (quoting *Davis v. U.S. Marshals Serv.*, No. 20-60465, 2021 U.S. App. LEXIS 8751, at *15-16 (5th Cir. Mar. 25, 2021)). Plaintiff has failed to reach this threshold question.

business and located as part of the reasonable search for the foreign language document, the producing party shall produce the foreign language version and the English-language version(s) of that document. In addition, if either party has or obtains during the course of this action a certified translation of a foreign language document that party shall produce both the original document and the certified translation either: (1) within fifteen (15) business days of obtaining the translation; (2) at the time it is relied upon in any filing with the Court, deposition, or expert report should the certified translation be relied upon in a Court filing, deposition, or expert report should the certified translation be relied upon in a Court filing, deposition, or expert report, or (3) at the time of service of trial exhibits in this action, whichever is earlier. Nothing in this paragraph obligates a party to produce certified translation of any documents that will not be relied upon before the Court, during deposition, or in an expert report.

6. [**Autoscribe's proposal:** "General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail parties must propound specific e-mail production requests."[4]] [**Nuvei's proposal:** Email and chat discovery are irrelevant

---

[4] **Autoscribe's position, ¶6:** Autoscribe's proposal is taken verbatim from the Model Order. In addition to the typical e-mail discovery needs of a patent case, there are several aspects of this case that weigh in favor of the relevance of email discovery. For example, Autoscribe's claim for infringement relies on inducement and/or contribution, and Nuvei has contested that it has made inducing communications to merchants. Additionally, e-mail discovery is likely to turn up relevant information on infringement (Nuvei has represented that it does not have a formalized design documents or technical specification outside of the external merchant implementation documentation available on its website, so details of the design and back-end systems are likely instead discussed in informal emails laying out system architecture and

to any issue before the Court. Accordingly, paragraphs 6-12 should not be included in the ESI order.[5]]

---

design guidelines), damages (including information on pricing decisions), and willfulness (including Nuvei's awareness of Autoscribe and its intellectual property). Additionally, Nuvei was recently taken private, and in 2020, Nuvei solicited Autoscribe for a potential M&A—both of these events likely resulted in emails with information relevant to damages (and possibly willfulness, if M&A assessed Autoscribe's patent portfolio as part of its M&A diligence).

[5] **Nuvei's Position, ¶6:** Autoscribe has not shown that email or chat discovery is relevant to this case. "It is well-settled that 'the party seeking discovery has the burden of demonstrating clearly that the information sought is relevant to the case and would lead to admissible evidence.'" *Med. Protective Co. v. Hipke*, Case No. 6:22-cv-223-JDK, 2023 U.S. Dist. LEXIS 157605, at *2 (E.D. Tex. May 26, 2023) (quoting *Davis v. U.S. Marshals Serv.*, No. 20-60465, 2021 U.S. App. LEXIS 8751, at *15-16 (5th Cir. Mar. 25, 2021)). Plaintiff has failed to reach this threshold question.

Defendants have repeatedly asked why email and chat discovery is relevant in this case, to little avail. No Defendant is accused of direct infringement; further, to the extent operation of any of Accused Products is in question, Defendants have already produced technical documentation and will be producing a source code computer – sources that directly state how the Accused Products work on Nuvei's end, and on which Autoscribe has asserted it intends to rely. Ex. A (Mar. 26, 2025 email from P. Hillegas); Ex. B at 7-8 (Apr. 22, 2025 email from C. Phillips). Indeed, Autoscribe's assertion that "Nuvei has represented that it does not have a formalized design/technical specification" is erroneous – Nuvei has produced many technical specifications, all of which are publicly available on Nuvei's website. *See* NUVEI_000505-NUVEI_001602, NUVEI_0004817-0005062. As Nuvei has produced the technical APIs and is in the process of producing the actual source code for the Accused Instrumentalities, email and chats cannot provide additional information regarding operation of the Accused Instrumentalities and therefore cannot be relevant to the question of infringement.

Nor can email or chats be relevant to the question of indirect infringement. Infringement is limited to use in the United States. But Autoscribe dropped the only Nuvei entity with customers in the United States, precluding any relevance to indirect infringement or damages. Autoscribe has provided no basis for its assertion that Nuvei once attempted to purchase Autoscribe – an assertion that came as a surprise to Nuvei. Ex. B at 8-9 (April 22, 2025 email from P. Hillegas). And while Autoscribe asserts that in "2020, Nuvei solicited Autoscribe for a potential M&A," the person in question (Emma Marshall) is a U.S. employee of Nuvei Technologies, Inc., the entity that Autoscribe already dropped from the case. Ex. B at 1 (April 25, 2025 email from C. Phillips) (presenting basis for belief that Nuvei attempted to acquire Autoscribe for the first time).

Finally, Autoscribe speculates that email may be relevant to "Nuvei's awareness of Autoscribe and its intellectual property" and "Nuvei was recently taken private" as bases for email relevance. But under *Crosby v. La. Health Serv. & Indem. Co.*, such speculation is improper. 647 F.3d 258, 264 (5th Cir. 2011) ("Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."). Autoscribe has presented no

6

7. [**Autoscribe's proposal:** "E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, a specific identification of the fifteen most significant listed e-mail custodians in view of the pleaded claims and defenses,[6] infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages. The exchange of this information shall occur at the time required under the Federal Rules of Civil Procedure, Local Rules, or by order of the court. Each requesting party may also propound up to three written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. The court may allow additional discovery upon a showing of good cause."[7,8]]

8. [**Autoscribe's proposal:** "E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall

---

theory or evidence to believe that Nuvei had any knowledge of Autoscribe or its intellectual property, nor how Nuvei's decision to go private has any relevance to damages.

As Autoscribe has been unwilling to assert why email and chat discovery is relevant to this case, it fails to meet its burden. The Court should therefore decline to require the parties go through the burdensome process of evaluating and producing such emails and chat, and strike Paragraphs 6-12 of the proposed ESI Order.

[6] A "specific identification" requires a short description of why the custodian is believed to be significant.

[7] **Autoscribe's position, ¶7:** Autoscribe's proposal is taken verbatim from the Model Order, with one change: for the sake of limiting disputes before the Court, Autoscribe has agreed to Defendants' request that the number of written discovery requests be limited to "three" rather than the original "five."

[8] **Nuvei's position, ¶7:** Nuvei disagrees that email is relevant to this case. *See* fn. 5. Should the Court determine that email is relevant, Nuvei does not oppose this paragraph.

7

limit its e-mail production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case."[9],[10]]

9. [**Autoscribe's proposal:** "Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is

---

[9] **Autoscribe's position, ¶8:** Autoscribe's proposal is taken verbatim from the Model Order. Defendants are a multinational corporate family, with offices doing relevant work across multiple continents. There are likely to be multiple people with unique discoverable information about finances, systems architecture, product development, marketing, and merchant integration. This is not a case where the "distinct needs" merit a reduction in custodians—Autoscribe's agreement to eight is already a compromise position.

[10] **Nuvei's position, ¶8:** Nuvei disagrees that email is relevant to this case. *See* fn. 5. Should the Court determine that email is relevant, Nuvei does not oppose this paragraph.

encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery."[11]]

[**Nuvei's proposal:** "Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. The party propounding that email production request will have the burden to prove to the Court that the request is proper. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery."[12]]

---

[11] **Autoscribe's position, ¶9:** Autoscribe's proposal is taken verbatim from the Model Order. Due to the number of accused instrumentalities (three services) and complexity of the issues in this case (including induced and contributory infringement), this is not a case where the "distinct needs" merit a reduction in the number of terms. Any concerns about overbroad search requests can be resolved in a more informed and less arbitrary manner by the parties collaborating to evaluate the number of search hits for each custodian or each search and refine them accordingly (as opposed to preemptively limiting the number of terms below ten).

[12] **Nuvei's position, ¶9:** Nuvei disagrees that email is relevant to this case. *See* fn. 5. Should the Court determine that email is relevant, Nuvei requests the inclusion of the sentence "The party

10. [**Autoscribe's proposal:** "A search provided in multiple languages (or regional variations in spelling) counts as one single search, provided each translated version of the search contains no differences other than the language of the search terms. Parties may, but are not required to, request a search in every language they reasonably believe the communication sought could be found."[13,14]]

11. [**Autoscribe's proposal:** "The parties shall confer in good faith to determine search terms and temporal limits for each custodian. Any attachment to an e-mail shall be considered a family member of that e-mail (and of the other attachments to that email) and vice versa. A document hit count shall be calculated to include each document containing one or more search terms. The family members of a document should not be included in the hit count unless they themselves contain one or more search terms, and two identical documents returned by the same search should not be double counted. The parties agree to reasonably exchange hit counts (both total hits and

---

propounding that email production request will have the burden to prove to the Court that the request is proper." As courts in this District have upheld, even in cases of email discovery, "the propounding party [must] meet its burden to establish relevance." *Travelpass Grp. v. Caesars Entm't Corp.*, No. 5:18-cv-153, 2020 U.S. Dist. LEXIS 26558, at *17 (E.D. Tex. Jan. 16, 2020).

Autoscribe's assertion that "[a]ny concerns about overbroad search requests can be resolved in a more informed and less arbitrary manner by the parties collaborating to evaluate the number of search hits for each custodian or each search and refine them accordingly" raises concerns about the propriety of its intended use of email. Autoscribe's refusal to agree that it must make relevant requests, even if the search request provides few hits, illustrates one of the ways in which Nuvei believes Autoscribe intends to use email as a fishing expedition, rather than a targeted exercise in finding relevant documents.

[13] **Autoscribe's position, ¶10:** Defendants are likely to identify custodians speaking many languages or dialects. Autoscribe's proposal is intended to preempt related concerns. Autoscribe understands that Nuvei is not opposed to this proposal, beyond its general objections to Paragraphs 6–12.

[14] **Nuvei's position, ¶10:** Nuvei disagrees that email is relevant to this case. *See* fn. 5. Should the Court determine that email is relevant, Nuvei does not oppose this paragraph.

unique hits that do not hit on another proposed custodian/term pair) and revise search terms should the submitted searches return too many results, considering the actual burden associated with reviewing the results."[15]]

[**Nuvei's proposal:** "The parties shall confer in good faith to determine search terms and temporal limits for each custodian. Any attachment to an e-mail shall be considered a family member of that e-mail (and of the other attachments to that email) and vice versa. A document hit count shall be calculated to include each document containing one or more search terms. The family members of a document should not be included in the hit count unless they themselves contain one or more search terms, and two identical documents returned by the same search should not be double counted. The parties agree to reasonably exchange hit counts per custodian/term pair and revise search terms should the submitted searches return too many results, considering the actual burden associated with reviewing the results."[16]]

12. [**Autoscribe's proposal:** "The Parties are obligated to produce only the most inclusive part of an email thread, with the exception of any individual emails in an email thread

---

[15] **Autoscribe's position, ¶11:** Autoscribe's proposal outlines a procedure for quickly negotiating reasonably targeted search requests, based on Counsel's experience litigating other cases. Autoscribe attempted to negotiate additional provisions pre-defining hit count limits that would be presumed to be reasonable or unreasonable, but Nuvei's proposal was untenable, and the parties could not reach an agreement.

[16] **Nuvei's position, ¶11:** Nuvei disagrees that email is relevant to this case. *See* fn. 5. Should the Court determine that email is relevant, Nuvei disagrees with Autoscribe's assertion that Nuvei must provide "unique hits that do not hit on another proposed custodian/term pair." Such a request would require Nuvei to dedupe across all searches with every amended request. Despite Autoscribe's assertion that this proposal is "based on Counsel's experience litigating other cases," counsel for Nuvei is unaware of any instance of such a provision been ordered in this District. *See, e.g.*, *Stafford v. East Texas Health System, LLC DBA UT Health East Texas*, No. 6:24-cv-419-JCB-KNM, Dkt. 18 (E.D. Tex. Jan. 17, 2025) (failing to require parties to dedupe hit counts across <u>all</u> searches); *Wave Sense, LLC v. Samsung Electronics Co., Ltd*, No. 2:24-cv-920-RWS-RSP, Dkt. 34 (E.D. Tex. Apr. 11, 2025) (same).

<span style="color:red">with unique, responsive attachments, which should also be produced. However, A party that receives an e-mail thread may make a reasonable request to receive any other e-mail within the thread, and upon receipt of such a request, the producing party shall produce the requested e-mail."[17],[18]] [**Nuvei's proposal:** "The Parties are obligated to produce only the most inclusive part of an email thread, with the exception of any individual emails in an email thread with unique, responsive attachments, which should also be produced."]</span>

13. <span style="color:red">[**Autoscribe's proposal:** "Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding. The mere production of an otherwise privileged or work product protected ESI will be presumed to be inadvertent for the purposes of this paragraph, unless circumstances demonstrate to the contrary."[19]]</span>

---

[17] **Autoscribe's position, ¶12:** For the sake of limiting disputes before the Court, Autoscribe does not contest Nuvei's proposed addition of this paragraph, so long as it is modified with the added final sentence in Autoscribe's proposal, shown above. Autoscribe anticipates that there may be a limited number of circumstances where, for the sake of trial presentation, a receiving party would prefer to use an intermediate email in a thread as an exhibit, rather than cropping it out of a larger thread. Autoscribe's proposed addition allows for that possibility. Autoscribe's phrasing mirrors Paragraph 5(d) ("Native Files") of the Model Order.

[18] **Nuvei's position, ¶12:** Nuvei disagrees that email is relevant to this case. *See* fn. 5. Should the Court determine that email is relevant, Nuvei does not oppose this paragraph.

[19] **Autoscribe's position, ¶13:** Autoscribe's proposal is taken verbatim from the Model Order, with an added sentence at the end. The intent behind this addition is that it will resolve the concerns that Defendants raised during meet and confers (apparently that establishing inadvertentness may be burdensome) by providing a presumption that such a production was inadvertent. Autoscribe does not agree to deviate from the assumptions and procedures laid out in F.R.E. 502(b), F.R.C.P. 26(b)(5)(B), and the Discovery Order (Dkt. 25, including at ¶6 and ¶12(f)). As written, Nuvei's proposal guts these rules and re-writes the agreed provisions of the Discovery Order.

        [**Nuvei's proposal:** "The disclosure or production by a Party of material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, or the failure to object to the use of such Privileged Information, whether inadvertent or otherwise, will not waive the applicable privilege and/or protection regardless of the circumstances of the disclosure or production, whether in this action or in any other federal or state proceeding. This provision constitutes an Order under Federal Rule of Evidence 502(d), which shall be interpreted to provide the maximum protection allowed by Rule 502(d), and shall be interpreted consistent with applicable ethical guidelines."[20]]

14. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

15. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

---

[20] **Nuvei's position, ¶13:** Nuvei's proposed language is becoming increasingly common in order to resolve disputes as to whether productions are "inadvertent." *See Grajeda v. Solis Trevino*, No. 5:24-cv-97, Dkt. 10 at 1 (S.D. Tex. Aug. 26, 2024) ("As authorized by Federal Rule of Evidence 502(d), the Court hereby orders that the production, whether inadvertent or otherwise, of any privileged or work-product-protected materials (including documents, electronically stored information, or any other materials) will not constitute a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d)."); *Kaki v. Cienfuegos Garza*, No. 5:22-cv-100, Dkt. 16, at 1 (S.D. Tex. June 1, 2023) (same); *Raider Marketing LP v. Chesapeake Energy Marketing LLC*, No. 3:17-cv-1516, Dkt. 36 at 1 (N.d. Tex. Nov. 3, 2017) (same). Autoscribe's proposal would reduce the protections afforded parties under FRE 502 by limiting them to disclosures under 502(b), effectively punishing clients for disclosure of their privileged materials based on how their counsel responds. And while the Parties <u>should</u> recognize that any disclosure of privileged material in productions would be inadvertent, Autoscribe's proposal indicates that it intends to contest whether any clawed back productions are truly inadvertent, increasing the burden on each of the Parties and the Court, as the Court would be required to mediate these disputes and determine whether privileged material was disclosed "inadvertently."

16.    This Order does not govern the format for the production of source code, which shall be produced pursuant to the relevant provisions of the Protective Order. The parties agree that any search terms will not be applied to source code.